STATE OF MAINE
*vs.*
EDWARD LARRABEE

Cumberland.   Opinion, May 20, 1960.

*Arthur Chapman, County Attorney*
*Clement Richardson, Asst. Co. Attorney*
*Casper Tevanian*
*Richard Broderick*

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

DUBORD, J. This case comes before us on report. By complaint dated March 23, 1957, Edward Larrabee was charged with operating a motor vehicle on a way in Falmouth in the County of Cumberland, on March 15, 1957, while under the influence of intoxicating liquor, in violation of Section 150, Chapter 22, R. S., 1954, as amended.

On the same day upon which the complaint was issued, the respondent was arraigned in Westbrook Municipal Court. Upon waiver of a hearing, a finding of guilty was entered, from which finding the respondent appealed to the next term of the Superior Court.

The case is submitted to this court upon an agreed statement of fact, in which it is admitted that the respondent operated a motor vehicle on a public way on the date alleged. It is further stipulated that shortly after his arrest, a sample of the respondent's blood with withdrawn from his arm with his consent; that as a result of a chemical test which is not questioned, it was found that there was 26/100% by weight of alcohol in his blood.

According to the agreed statement of facts, the State relies solely upon the weight to be given to the evidence of the result of the blood analysis to establish that the respondent was under the influence of intoxicating liquor.

The State contends that by force of the provisions of the statute making a finding of 15/100%, or more, by weight of alcohol in a person's blood prima facie evidence such person is under the influence of intoxicating liquor, that the respondent, not having rebutted the evidence of his blood alcoholic content, is to be found guilty.

The respondent takes the position that evidence of the blood analysis cannot be given prima facie weight.

The case is submitted to us upon the stipulation that if this court should find that the result of the blood analysis is to be given prima facie weight to the effect that the respondent was under the influence of intoxicating liquor, then judgment is to be entered for the State; and if this court finds that prima facie weight should not be given to the result of the blood analysis, then judgment should be entered for the respondent and the complaint quashed.

The agreed statement of facts concludes: "The sole issue involved is whether or not prima facie weight is to be given to the evidence of blood analysis when the blood was drawn from the respondent's arm and not through a 'chemical analysis of his breath.' "

The statute involved is Section 150, Chapter 22, R. S., 1954, as amended. The evolution of this section has been piecemeal.

By Chapter 94, P. L., 1955 the following sentence appearing in the 1954 revision: "Blood tests the expense for which has been paid for by, or charged to, the county or state may be admissible in evidence," was repealed.

Section 150 was amended by Chapter 322, P. L., 1955, whereby there was added after the second sentence the following:

"The court may admit evidence of the percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by a chemical analysis of his breath."

To the sentence provided by Chapter 322, P. L., 1955, were added the words "blood or urine" by Section 10, Chapter 308, P. L., 1957.

At the time of the alleged offense, by the respondent, the pertinent portion of the statute read as follows:

"The Court may admit evidence of the percentage by weight of alcohol in the defendant's blood at

the time alleged, as shown by a chemical analysis of his breath. Evidence that there was, at that time, 7/100%, or less, by weight of alcohol in his blood, is prima facie evidence that the defendant was not under the influence of intoxicating liquor within the meaning of this section. Evidence that there was, at that time, from 7/100% to 15/100% by weight of alcohol in his blood is relevant evidence but it is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this section. Evidence that there was, at the time, 15/100%, or more, by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section. All such tests made to determine the weight of alcohol in the blood shall be paid for by the county wherein the violation of the provisions of this section was alleged to have occurred. The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him."

It is contended by the respondent that because the sentence added by Chapter 322, P. L., 1955 is limited to the admission of evidence of percentage by weight of alcohol as shown by a chemical analysis of the breath, the prima facie evidence provisions of the sentences next following do not apply to evidence of alcoholic content of the blood obtained, as was done in this case, by drawing blood from the respondent's arm.

To resolve the issue, it is necessary to construe the statute and the various amendments in the light of legislative intent.

However, before passing upon the question of legislative intent, we give consideration to the law relating to the admissibility of evidence of analytical tests for alcohol in a person's system.

In the first place, it is to be noted that there is no constitutional objection to a statute making one fact presumptive or prima facie evidence of another. Wharton's Criminal Evidence, 12th Edition, Vol. I, § 91, Page 176.

"Although there is as yet a very limited amount of authority upon the question, so that a positive general rule cannot now be formulated, it may be said that the following decisions clearly indicate that where the prosecution seeks to establish the intoxication of an accused in a criminal case, evidence as to the taking of a specimen of a bodily fluid of the accused, of the alcoholic content of such specimen as determined by analysis, and expert opinion evidence as to intoxication based upon the presence of such alcohol in the accused's system, is admissible against the accused, if he voluntarily furnished the specimen of his blood, or urine or other bodily fluid, or submitted without objection to the taking of such specimen; provided, of course, that the identity of the specimen analyzed and the accuracy of the analysis are properly established." 127 A. L. R. 1514.

"From the cases generally, it is apparent that, subject to compliance with conditions as to relevancy in point of time, tracing and identification of the specimen, accuracy of the analysis, and qualification of the witness as an expert in the field, there is rather general agreement that where the prosecution in a criminal case seeks to establish the intoxication of the accused, evidence as to the obtaining of a specimen of his body fluid at or near the time in question, evidence as to the alcoholic content of such specimen, as determined by scientific analysis, and expert opinion testimony as to what the presence of the ascertained amount of alcohol in the blood, urine, or other body fluid of an individual indicates with respect to the matter of such individual's intoxication or sobriety, is ordinarily admissible as relevant and competent evidence upon the issue of intoxication, at least where the accused voluntarily furnished the specimen for the

test, or submitted without objection to its taking." 159 A. L. R. 210.

"That an analysis of this kind and expert opinion evidence based thereon do have probative value upon the issue of intoxication or being under the influence of intoxicating liquor has quite generally been assumed or conceded in the cases which have reached the appellate courts." 159 A. L. R. 210.

Our own court has recognized in two recent opinions that the result of a blood test is admissible as evidence.

"Any person can have a blood test at any time, and the result can be testified to in court under the common law as a scientific fact. So can any relevant fact be testified to in the trial of a case, if not otherwise inadmissible by some rule of exclusion." *State of Maine* v. *Demerritt,* 149 Me. 380, 386; 103 A. (2nd) 106.

"Obviously, the statute (Section 150, Chapter 22, R. S. 1954) does but three things. (1) It establishes the prima facie effect of a showing of certain quantities of alcohol in the blood as tending to prove the presence or absence of influence from the alcohol consumed. (2) It provides protection for the respondent from any prejudice which might result from his refusal or failure to have tests made. (3) It provides for payment for such tests if they are made. The statute itself establishes no rights as to the making of tests and imposes no obligations on the part of either arresting officers or the respondent.

"The test, once properly made, becomes available to either the State or the respondent in exactly the same way that other material evidence is available. It may be said that it is distinguishable from other types of evidence only in one particular and that has to do with the timing of the taking of the blood sample to be tested. By the express terms of the statute, the thing to be ascertained is the per cent by weight of alcohol in the blood 'at the time' of the alleged offense." *State* v. *Munsey,* 152 Me. 198, 200; 127 A (2nd) 79.

It is significant to note that both of these decisions approving admissibility of evidence of the result of blood tests were made prior to the enactment of Chapter 322, P. L., 1955. In other words, this court has held that evidence of the result of a blood test was properly admitted in cases where a respondent was charged with operating a motor vehicle while under the influence of intoxicating liquor, when the portion of Section 150, Chapter 22, R. S., 1954, relating to the prima facie effect of a finding in excess of 15/100%, or more, by weight of alcohol in the respondent's blood, withdrawn from his body, stood alone, without the sentence which now precedes that portion of the statute relating to the admissibility of evidence of alcoholic blood content obtained by a chemical analysis of the breath.

Giving consideration to the section of the statute involved in the light of decisions of this court, we find that prior to the enactment of Chapter 322, P. L., 1955, the result of the analysis of a blood sample taken from a person's body pertaining to the amount of alcohol found therein was properly admissible in evidence. The original statute, before the enactment of Chapter 322, P. L., 1955 did not prescribe the nature of the test, but took it for granted that the blood would be analyzed. Obviously, the most direct way to analyze the blood is to examine a blood sample. When the legislature, by Chapter 322, P. L., 1955, gave approval to an indirect method of analyzing the blood (by the breath) it was not intended to eliminate the most simple and direct way of doing it. The legislature is presumed not to intend an absurd result. When the words "blood or urine" were added by Section 10, Chapter 308, P. L., 1957, the legislature was merely clarifying what it had always intended. Therefore, from 1955 to 1957, a blood test could still be made from analysis of blood samples (as well as by the breath) and the test then made was entitled to prima facie weight as evidence that the respondent was under the influence of

intoxicating liquor. There is nothing in Chapter 322, P. L., 1955 which curtails the effect of the prima facie provisions of Section 150, Chapter 22.

The provisions of Section 150, Chapter 22, R. S., 1954, as amended, in no manner change or reduce the burden upon the State of proving the respondent guilty beyond a reasonable doubt. In accordance with the general rule that the weight of evidence is determined by the jury, the weight of the result of the test under this statute is not conclusive, but is to be determined by the jury once it has been shown that the test is accurate and properly administered. The State still has the burden of proof and is required to establish every essential element of the crime charged beyond a reasonable doubt. At the close of the evidence offered by the State, the defendant has the choice of two courses to follow: (1) he may choose to offer no evidence and have the case submitted to the jury to determine whether the evidence of the State has met the degree of proof required and thus overcome the presumption of innocence, or (2) he may proceed to offer evidence on his own behalf. The ultimate burden of proof remains on the prosecution to prove the defendant's guilt beyond a reasonable doubt.

> "A manifest distinction exists between the burden of proof and the burden of going forward with the evidence. Generally the burden of proof upon any affirmative proposition necessary to be established as the foundation of an issue does not shift, but the burden of evidence or the burden of explanation may shift from one side to the other according to the testimony. Thus, if the prosecution has offered evidence which if believed by the jury would convince them of the defendant's guilt beyond a reasonable doubt, the defendant is in a position where he should go forward with countervailing evidence if he has such evidence. He is not required to do so even though a prima facie case has been established, for the jury must still find that he is guilty

beyond a reasonable doubt before they can convict. That is, the burden of proof rests on the prosecution throughout the trial, and the jury cannot convict a defendant by default merely because he does not offer any evidence in his behalf." Wharton's Criminal Evidence, 12th Edition, Vol. I, § 13, Page 37.

Nothing in this decision is to be construed to be, in any manner, in conflict with the opinion of this court in *Hinds* v. *Hancock Mutual Life Insurance Company*, 155 Me. 349; 155 A. (2nd) 721, in relation to disputable presumptions, as distinguished from statutory declarations creating prima facie evidence. In the case before us, the respondent had the right to endeavor to rebut the effect of the prima facie provisions of the statute. He has seen fit not to attempt such rebuttal or contradiction. We are of the opinion that the prima facie provisions of the statute are entitled to the weight which supports a verdict of guilty.

The entry will be:

*Judgment for the State.*