**STATE of Iowa, Appellee,**

v.

**Daniel Jasper HANSEN, Appellant.**

No. 55248.

Supreme Court of Iowa.

Dec. 20, 1972.

Patterson, Lorentzen, Duffield, Timmons & Irish, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and Robert D. Jacobson, Asst. Atty. Gen., for appellee.

LeGRAND, Justice.

Defendant was arrested following some erratic driving on I–35 near the Cumming interchange on January 1, 1971. He was later convicted by a jury of driving a motor vehicle while under the influence of intoxicating liquor in violation of section 321.281, The Code. He appeals from the judgment imposing sentence on that conviction. We reverse and remand for a new trial.

The two assignments of error involve questions which make a recitation of the facts unnecessary. These assignments are:

(1) The court erred in giving Instruction 14 dealing with the statutory presumption arising from the presence of a specified percentage of alcohol in defendant's blood; and

(2) The court erred in receiving the results of defendant's breath test made under section 321B.4, The Code, because no proper foundation for its admission was laid.

I. Instruction 14 is here set out:

"A statute of this State provides that if there is evidence that a person operating a motor vehicle upon a public highway, had at the time of said operation, more than ten one-hundredths of one percentum by weight of alcohol in his blood, the same shall be presumptive evidence that such person was then under the influence of an alcoholic beverage.

"The rule established by the foregoing statute permits the jury to infer that the defendant was under the influence of an alcoholic beverage, if it is found by the jury that at the time defendant was driving an automobile on the public highway his blood contained more than ten one-hundredths of one percentum by weight of alcohol.

"However, such inference is not conclusive, but is rebuttable. It may be overcome or rebutted by evidence to the contrary."

The statute referred to in this instruction is section 321.281, The Code, which provides in part that "evidence that there was * * * more than ten hundredths of one percentum by weight of alcohol in his blood shall be admitted as presumptive evidence that the defendant was under the influence of an alcoholic beverage."

Defendant objected to the instruction at trial and again in his motion for new trial, each time without success. He claimed then, and argues now, that the instruction is bad because (1) it deprives him of due process and destroys his presumption of innocence; (2) it shifts to him the burden both of going forward with the evidence and of persuasion by requiring the production of evidence to rebut the presumption arising from the presence of a stated amount of alcohol in his blood; (3) it is irreconcilably in conflict with Instruction 7 dealing with the presumption of innocence and results in a confusing and conflicting charge to the jury; and (4) it compelled him to take the stand in his own defense in violation of his 5th Amendment right to remain silent.

■ The right of the legislature to create evidentiary presumptions in criminal cases is no longer seriously challenged. Such laws are generally upheld as long as two conditions are satisfied: Such presumptions may not be conclusive of the issue and there must be a rational relationship between the fact sought to be established and the one presumed. Jones on Evidence, page 134, section 3:5, (Sixth Ed. 1972); 3 Underhill's Criminal Evidence, page 1954, section 874, (Fifth Ed. 1957); Annot. 46 A.L.R.2d 1176 (1956); State v. Van Voltenburg, 260 Iowa 200, 206, 147 N.W.2d 869, 871 (1967); State v. Kelly, 218 Minn. 247, 15 N.W.2d 554, 557 (1944); Tot v. United States, 319 U.S. 463, 466, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519, 1524 (1943).

■ In State v. Van Voltenburg, supra, we discussed an analogous statute—section 708.7 making possession of burglar tools presumptive evidence of intent to commit burglary—and held that statute to be constitutional. What was said there is equally applicable here, as are the authorities cited in support of that conclusion. We find the portion of section 321.281 dealing with the effect of blood alcohol tests is constitutional; but we must also determine whether the manner in which the presumption arising from the test was presented to the jury is constitutionally proper.

■ The subject of presumptions and inferences is one which has long been trou-

blesome and confusing. McCormick, The Law of Evidence, page 802, section 342 (Second Ed. 1972); 1 Jones on Evidence, page 125–134, sections 3:1–3:4 (Sixth Ed., 1972). As pointed out by these and other authorities, the terms are sometimes used interchangeably—or "loosely"—but they are nevertheless fundamentally different. A true presumption is a conclusion which the law makes *mandatory* upon proof of the required preliminary facts; and inference is a *permissible* finding based on the existence of other facts. Black's Law Dictionary, pages 917 and 1349, (Rev. Fourth Ed. 1968).

Most states have statutes attaching, in one way or another, particular significance to the results of chemical tests which disclose more than the stated amount of alcohol in a defendant's blood.

Some laws provide, where the statutory percentage is exceeded, it "shall be presumed that the defendant was under the influence of intoxicating liquor." State v. Childress, 78 Ariz. 1, 274 P.2d 333 (1954); State v. Myers, 26 Ohio St.2d 190, 271 N.E.2d 245 (1971); State v. Protokowicz, 55 N.J.Super. 598, 151 A.2d 396 (1959). Others recite that such a test result is prima facie evidence the defendant was then under the influence of intoxicating liquor. State v. Corsiglia, Mo.App., 435 S.W.2d 430 (1968); State v. Larrabee, 156 Me. 115, 161 A.2d 855 (1960).

Our statute (section 321.281) makes the existence of more than ten hundredths of one percentum by weight of alcohol in the defendant's blood "presumptive evidence" that he was under the influence of an intoxicating beverage.

█ We believe this language is analogous to the prima facie approach rather than that which specifically creates a presumption of intoxication. We believe, too, our statute raises an inference (sometimes called a "presumption of fact") and not a presumption at all, even though we have often referred to it as a presumption.

On this matter we said in Stenberg v. Buckley, 245 Iowa 622, 626, 61 N.W.2d 452, 454 (1953):

"What are commonly known as 'presumptions of fact' are really not presumptions at all, but inferences. '* * * a "presumption of fact," in . the loose sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact, * * *' Wigmore on Evidence, 3rd Ed., Vol. IX, 288, section 2491. Greenleaf on Evidence, 144, § 44, says:

" 'They are, in truth, but mere arguments, * * *' and '* * * depend upon their own natural force and efficacy in generating belief and conviction in the mind, * * *'.

"These inferences do not affect the duty of either party to produce evidence, except as each party is desirous of showing whatever he can to aid his case. Whether an inference of fact, a 'presumption of fact in the loose sense' as Dean Wigmore describes it, aids a litigant, depends upon whether the common knowledge and experience of men, as applied to facts shown lead to the belief that ordinarily and usually further facts or consequences follow. Such an inference is a reasoning process, an inferring from other facts which appear in evidence. * * * Whether an inference is to be drawn from a given set of facts depends upon whether the state of affairs to be inferred usually and generally follows from the facts shown."

This was quoted approvingly in part as recently as 1971 in State v. Boner, Iowa, 186 N.W.2d 161, 166. There, incidentally, the objectionable part of Instruction 14 was omitted from the charge to the jury. Cf. State v. Van Voltenburg, supra, 260 Iowa at page 206, 147 N.W.2d at page 871.

With this as a backdrop, we now view Instruction 14 as it relates to the constitutional objections raised. The issue is a narrow one. We find nothing prejudicial

in that part of Instruction 14 which sets out the statutory language that the presence of the stipulated percentage of alcohol in defendant's blood is presumptive evidence he was under the influence of an intoxicating beverage. However, we hold the instruction then erroneously converts this into a *conclusive* presumption if evidence is not produced to rebut it. The statute was not intended to serve that purpose; nor could it constitutionally do so.

The case comes close to the circumstances in Barrett v. United States, 5 Cir., (1963), 322 F.2d 292, 295, where the court struck down a federal statute making certain evidence concerning the operation of a still sufficient to justify a conviction "unless the defendant explains [the matter] to the satisfaction of the jury."

The court said:

"When, however, the legal effect of the rule is to allow an accused person to be found guilty of a crime solely on the basis of the presumption, unless he comes forward with evidence to overcome the nonexistence of the presumed fact, the practical effect is to coerce the accused into taking the stand in spite of the Fifth Amendment provision that 'No person * * * shall be compelled in any criminal case to be a witness against himself.' The presumption gives short shrift to the constitutional privilege. It is all very well to say that the defendant need not take the stand: all he has to do is to come forward with evidence. *But should the accused exercise his constitutional privilege of remaining silent, the presumption amounts to a decisive, unanswerable comment on his Fifth Amendment right not to testify.* * * * A person accused of a crime has more than the right to present evidence in his defense. He has the constitutional right to sit on his hands. * * *" (Emphasis added.)

 We recognize the instruction now under attack does not specifically require

*defendant* to produce rebutting testimony; but it does demand that someone—either defendant or the State—do so when it tells the jury the blood test results "may be overcome or rebutted by evidence to the contrary."

This is the same as instructing the jury that the presumption is conclusive *unless* rebutted by evidence to the contrary; and we say this is error. The blood test results do not become a verity simply because they go unchallenged. Like all evidence, this "presumptive evidence" may be accepted or rejected by the jury. Defendant's silence on the subject lends no added strength to the State's proof nor does it ease the burden of establishing guilt beyond a reasonable doubt. Yet that is what instruction 14 permits.

In discussing a somewhat similar problem in State v. Larrabee (1960), 156 Me. 115, 161 A.2d 855, 859, the Supreme Court of that state said:

"In accordance with the general rule that the weight of evidence is determined by the jury, the weight of the result of the [blood] test under this statute is not conclusive, but is to be determined by the jury, once it has been shown that the test is accurate and properly administered. * * * At the close of the evidence offered by the State, the defendant has a choice of two courses to follow: (1) he may choose to offer no evidence and have the case submitted to the jury to determine whether the evidence of the State has met the degree of proof required and thus overcome the presumption of his innocence, or (2) he may proceed to offer evidence in his own behalf. The ultimate burden of proof remains on the prosecution to prove the defendant's guilt beyond a reasonable doubt."

Several North Carolina cases also support our conclusion. A statute of that state makes blood test results meeting certain standards admissible as prima facie evidence. In State v. Bryant (1957), 245 N.C. 645, 97 S.E.2d 264, 267, the Supreme

Court of North Carolina condemned as prejudicial error an instruction which defined prima facie evidence as "that which suffices for the proof of the particular fact unless contradicted and overcome by other evidence."

The court said:

"The statute creates a factual inference or conclusion to be drawn from other facts recited in the statute. This inference or conclusion is denominated *prima facie* evidence. It, like all the other evidence, must be weighed before the jury can render a verdict. In criminal cases this evidence, coupled with other evidence, must establish defendant's guilt beyond a reasonable doubt. Defendant is entitled to have the jury scrutinize this evidence as it does all of the other evidence with a presumption of innocence in his favor. It does not suffice for proof 'until contradicted and overcome by other evidence.' It may fall because of its own weakness. The facts which call for an application of the statutory rule of evidence may, when viewed in their proper perspective, cause the jury to reject as unworthy of belief the *prima facie* evidence created by the statute." * * *

Several later cases—State v. Cooke, (1967), 270 N.C. 644, 155 S.E.2d 165 and State v. Jent (1967), 270 N.C. 652, 155 S.E.2d 171—reiterate the rule of State v. Bryant, supra. Additional support is found in State v. Cuevas (Haw.1971), 488 P.2d 322, 325. See also the annotation dealing with this subject at 16 A.L.R.3d 748 (1967).

The problem is well stated in State v. Kelly, 218 Minn. 247, 15 N.W.2d 554, 560 (1944), where the court said:

"In testing the validity of statutes creating prima facie proof for use in criminal cases, we must keep in mind not only the guarantees of due process and trial by jury and the constitutional protection against being compelled to testify—which are expressly enumerated—but also such fundamental rights as the presumption of innocence and proof beyond a reasonable doubt. * * *"

See also State v. Edwards, 269 Minn. 343, 130 N.W.2d 623, 626 (1964).

The issue arises here for the first time because of a 1969 amendment to section 321.281 by which the Sixty-third General Assembly added the "presumptive evidence" rule to that statute. Although we have not yet passed on its application and effect, we have rather broadly hinted at today's decision on several occasions.

In State v. Van Voltenburg, supra, 260 Iowa at page 206, 147 N.W.2d at page 872, in considering a similar statute, we made this pertinent statement:

"Although defendant does not challenge the instructions given we note the jury was advised by the trial court to the effect the statutory presumption here involved [making possession of burglar's tools presumptive evidence of intent to commit burglary under section 708.7] is not conclusive, it imposes no burden of proof upon defendant, and *even if the possession of burglary tools remained unexplained defendant could not be found guilty if the State failed to prove his guilt beyond a reasonable doubt.*" (Emphasis added.)

In an earlier case involving a burglary charge, we considered the effect of defendant's possession of recently stolen goods and said: (State v. Brady, 121 Iowa 561, 567, 97 N.W. 62, 64 [1903])

"The further instruction * * * that the effect of such possession of stolen property is 'to raise a presumption of guilt of the defendant unless the attending circumstances or other evidence overcome the presumption that is hereby raised as to create a reasonable doubt of

guilt,' has perhaps too much support in some of the precedents to justify us in reversing the case on that ground; but we think the language unhappily chosen. The law does not attach a 'presumption of guilt' to any given circumstance, nor does it require the accused to 'overcome the presumption thereby raised,' in order to be entitled to an acquittal. What the law does say is that the fact of possession is evidence of guilt upon which a conviction may properly be returned, unless the other facts or circumstances developed be such that, notwithstanding the recent possession, the jury still entertains a reasonable doubt of the defendant's participation in the crime. It is in this sense that the words 'presumption' and 'prima facie evidence' must be understood when employed in this connection. * * * In 1 McClain's Cr[iminal] Law, § 617, it is said the rule here stated is 'sounder in principle than that which requires the defendant in some form to overcome the presumption and establish his innocence.' That the word 'presumption,' as used in this class of cases, indicates no more than that the fact of possession is sufficient evidence to sustain a finding of guilt, is shown by the language employed in the opinion of this court in State v. Kelly, 57 Iowa [644,] 646, 11 N.W. 635, where it is said: 'The recent unexplained possession of stolen property tends to establish the guilt of the person in whose possession it is found, and will authorize conviction unless the inference of guilt is overcome by other facts tending to establish the innocence of the accused. * * * The law holds that the presumption in question, unless overcome, will authorize a conviction.' If, as here indicated, the term 'presumption of guilt' be understood as something which authorizes conviction, and not something requiring it, the use is not open to just criticism; but, unless guarded by proper explanation, we think there is danger that jurors may give it the latter construction."

Instruction 14 does just what State v. Brady feared—conveys to the jury the notion that the unrebutted "presumptive evidence" required, rather than permitted, a finding defendant was under the influence of an alcoholic beverage.

An instruction on this issue should set out the fact that the test is presumptive evidence and charge the jury to determine under all the facts and circumstances in the case whether defendant was under the influence of an intoxicating beverage. It should not place significance on the failure to produce rebutting evidence. We hold Instruction 14 was reversibly erroneous for the reasons already stated and that defendant is entitled to a new trial. While the statute (section 321.281) is itself constitutional, the instruction here represents an unconstitutional application of its provisions. Even after considering the instructions as a whole, which we are obliged to do, we are satisfied Instruction 14 cannot be approved.

II. The second error concerns the admission of the results of the so-called breathalyzer test. Objection was made at trial concerning the sufficiency of the foundation. The dispute centered around the provisions of section 321B.4, which provides in material part as follows:

"However, any peace officer, *using devices and methods approved by the commissioner of public safety,* may take a specimen of a person's breath or urine for the purpose of determining the alcoholic content of the person's blood. * * *" (Emphasis added.)

Defendant objected there was no showing that the devices or methods used had been approved by the commissioner of public safety. All the objections were lodged during the testimony of the police officer who took the test.

We doubt if this error is properly here for review, but we pass that question since the matter will necessarily arise on re-trial.

We therefore consider the assigned error concerning the taking of the test.

In order to comply with this section, two conditions must be satisfied. First, it must appear that the commissioner of public safety has approved "devices and methods" for administering tests under section 321B.4, The Code; and second, the evidence must show those devices were used and those methods were followed in giving the test. The officer's bare conclusion that he did so is insufficient. There is no showing any standards were adopted by the commissioner; nor, if adopted, what they were.

■ For purposes of cross-examination, if for no other reason, a defendant is entitled to know what devices and methods have been approved. The trial court, too, should be advised on this matter in order to rule on the admissibility of the offered evidence. Cf. Davis, Administrative Law Text, Third Ed. (1972), pages 36–41, section 2.06 and pages 140–142, section 6.02. We have recently emphasized the necessity for following statutory procedure in giving tests authorized under chapter 321B, The Code. These pronouncements apply with equal force to administrative rules adopted pursuant to the authority granted to the Commissioner of Public Safety. State v. Wallin, 195 N.W.2d 95, 98 (Iowa 1972); State v. Boner, 186 N.W.2d 161, 165 Iowa 1971).

■ On re-trial of this case, assuming proper objection is made, the results of the breathalyzer test administered to defendant should be admitted only upon a showing (1) of the devices and methods approved by the Commissioner of Public Safety for the taking of such tests as provided in section 321B.4 and (2) proof that the test was given by use of the approved devices and methods.

III. Because we hold there was reversible error in Instruction 14, we reverse the trial court and remand for new trial.

Reversed and remanded.

MASON, RAWLINGS, REYNOLD-SON and McCORMICK, JJ., concur.

MOORE, C. J., and REES, UHLEN-HOPP and HARRIS, JJ., dissent.

MOORE, Chief Justice (dissenting).

I respectfully dissent from the interpretation given Instruction 14 in Division I of the majority opinion and reversal of defendant's conviction.

As pointed out by the majority the right of the legislature to enact properly drawn statutes creating evidentiary presumptions in criminal cases is now well established. To pass constitutional muster they must not be made conclusive of the issue involved and must have a rational relationship between the fact sought to be established and the one presumed.

The fundamental law in this area is thus stated in 29 Am.Jur.2d section 126, page 159:

"Statutes of the various states contain numerous enactments creating or declaring presumptions or specifying that certain facts shall constitute prima facie evidence of other facts, the effect of which is to relieve the party in whose favor they operate of the necessity of producing evidence upon an issue and cast upon the other party the burden of going forward with the evidence. They do not, however, shift the burden of proof, but simply permit one to make a prima facie case in a way that he could not make it without the statute."

Statutes creating a presumption or inference of intoxication from specific percentages of alcohol in a person's system must be made rebuttable. See Annot., 16 A.L. R.3d, p. 748, section 5.

Instruction 14 is Iowa Uniform Instruction 520.8. It was prepared and adopted by an able committee of the Iowa State Bar Association. We disagree with these

uniform instructions reluctantly. Ness v. H. M. Iltis Lumber Company, 256 Iowa 588, 593, 128 N.W.2d 237, 240; McMaster v. Hutchins, 255 Iowa 39, 45, 120 N.W.2d 509, 512.

Throughout the instructions the trial court put the burden on the State to prove defendant's guilt beyond a reasonable doubt.

Instruction 1 includes:

"To the charge in said County Attorney's Information the defendant has entered a plea of not guilty. This is a denial of the charge and every part thereof, and places on the State the burden of proving the allegations therein beyond a reasonable doubt. The State must prove the defendant guilty beyond a reasonable doubt or you must acquit him."

Instruction 4 states:

"You are to determine the questions submitted in this case from the evidence offered in the record, and the law as given you in these instructions.

"The court has not attempted to embody all the applicable law in any one of the instructions, but in the consideration thereof, each instruction should be construed in the light of and in harmony with every other instruction, and applied as a whole to all the evidence admitted at the trial."

Instruction 7 states:

"The law presumes that the defendant in a criminal action is innocent and not guilty of the offense charged against him. This presumption requires you to put out of your minds all suspicion which might arise from the arrest, the information, the arraignment, or the present situation of the defendant. The presumption of innocence must prevail unless the evidence establishes beyond a reasonable doubt that the defendant committed the offense charged against him."

Instruction 9 states:

"Before you can convict the defendant of the crime charged in the information in this case, the State must prove by evidence beyond a reasonable doubt each one of the following propositions:

"1. That the defendant herein, Daniel Jasper Hansen, did operate a motor vehicle upon the public highways of Warren County, Iowa.

"2. That at the time the defendant did so operate a motor vehicle he was under the influence of an alcoholic beverage.

"3. That said acts took place in Warren County, Iowa on or about the 1st day of January, 1971.

"If you find from the evidence that the State has established beyond a reasonable doubt each one of the above three propositions, then you should find the defendant guilty as charged in the information.

"If the State has failed to prove said propositions beyond a reasonable doubt, then you cannot convict the defendant and you should return your verdict of not guilty."

The first sentence of Instruction 12 states: "The burden is on the State to prove the defendant guilty beyond a reasonable doubt." It is followed by a definition of "reasonable doubt".

In Instruction 14 the trial court instructed on the evidentiary presumption or inference authorized by Code section 321.281. It states:

"A statute of this State provides that if there is evidence that a person operating a motor vehicle upon a public highway, has at the time of said operation, more than ten one-hundredths of one percentum by weight of alcohol in his blood, the same shall be presumptive evi-

dence that such person was then under the influence of an alcoholic beverage.

"The rule established by the foregoing statute permits the jury to infer that the defendant was under the influence of an alcoholic beverage, if it is found by the jury that at the time defendant was driving an automobile on the public highway his blood contained more than ten one-hundredths of one percentum by weight of alcohol.

"However, such inference is not conclusive, but is rebuttable. It may be overcome or rebutted by evidence to the contrary."

This instruction merely states a rule of evidence as created by the statute. It makes no reference to the burden of proof. It imposes no burden or duty on defendant merely because a statutory rule of evidence has come into play. I fail to see wherein Instruction 14 presumes defendant's guilt or relieves the State of its burden to prove guilt beyond a reasonable doubt. Such contentions by defendant are untenable.

Of necessity the instruction states any inference which may be drawn is not conclusive but is rebuttable. Somehow the majority interprets the instruction as making the permissive inference conclusive. I do not so read it. It specifically states "such inference is not conclusive." It does not require defendant to do anything.

Instruction 14 simply states such evidence as referred to in the statute which *permits* the jury to infer defendant was under the influence of an alcoholic beverage *may* be overcome or rebutted by evidence to the contrary. The State's evidence contains much rebuttal to the permissive inference. It includes the arresting officer's testimony that defendant without difficulty produced his driver's license, he readily responded to questions, he performed the breath test without difficulty and was at all times cooperative. Certainly it is not reversible error to tell the jury they may consider this other evidence together with the permissive inference.

I would affirm.

REES, UHLENHOPP and HARRIS, JJ., join in this dissent.